# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| SOUTHLAND ROYALTY COMPANY LLC, | Case No. 20-10158 (KBO) |
| Debtor. |  |
| SOUTHLAND ROYALTY COMPANY LLC, |  |
| Plaintiff, | Adv. Proc. No. 20-50741 (KBO) |
| v. |  |
| HALLIBURTON ENERGY SERVICES, INC., |  |
| Defendant. |  |

## MEMORANDUM OPINION[1]

      Pending before the Court is a motion for partial summary judgment (Adv. D.I. 19, the "Motion") filed by plaintiff-debtor Southland Royalty Company LLC ("Southland") in the above-captioned adversary proceeding. By the Motion, Southland seeks an order finding that under Wyoming law, a mechanic's and materialmen's lien asserted by Halliburton Energy Services, Inc. ("Halliburton") on assets related to certain of Southland's wells (other than production and proceeds) is junior to the lien of its Prepetition Lenders (as defined herein). This relief is not contested and therefore the Court will grant it. As additional relief, Southland seeks an order finding that Halliburton did not obtain a lien on Southland's production of oil, natural gas, and natural gas liquids, and the proceeds thereof ("Production"), or, if it did, that such lien is junior to the lien of its Prepetition Lenders. For the reasons set forth herein, the Court finds that Halliburton did not obtain a lien on Production and thus will find in favor of Southland on this issue.

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

1

**I.    JURISDICTION**

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under U.S.C. § 157(b)(2)(A), (K), and (O).  Southland and Halliburton consent to the entry of a final judgment or adjudication by this Court.

**II.    RELEVANT BACKGROUND**

Southland is an upstream energy company focused on the acquisition, development, and exploitation of oil, natural gas, and natural gas liquid reserves in North America.  It owns leasehold and mineral interests in the Wamsutter field of the Greater Green River Basin in southwestern Wyoming.  Halliburton is one of the world's largest oil field service providers.  Among the services Halliburton provided to Southland included the opening of newly constructed wells located in Wyoming described as the Chain Lakes Well I5 21-1H and the Chain Lakes Well I5 21-5H (the "Wells") so that oil could begin flowing.  Construction on the Wells allegedly began in May and June of 2019 (the "Commencement Date").[2]  Haliburton began and completed its work on the Wells on August 6, 2019 and August 16, 2019, respectively.  The Wells started producing on August 24, 2019.

On January 27, 2020 (the "Petition Date"), Southland filed a voluntary petition for relief under title 11 of chapter 11 of the United States Code.  Shortly thereafter, on February 11, 2020, Halliburton asserted several mechanic's and materialmen's liens under Wyoming law against certain of Southland's assets for outstanding amounts totaling approximately $11.4 million. Relevant for this proceeding is the lien for $1,458,554.42 that Halliburton caused to be recorded in Sweetwater County, Wyoming at Record No. 1672411, Book 1230, Page 3828, (the "M&M Lien") encumbering the Wells and an acreage tract described as Section 21, Township 23 North, Range 93 West.  One day later, on February 12, 2020, Haliburton sent a letter (the "Production Trapping Letter") to Wamsutter LP ("Wamsutter"), a purchaser of Southland's oil and gas, notifying it that Halliburton holds a lien claim against such property and proceeds and providing a copy of the M&M Lien.  During oral argument on the Motion, Halliburton claimed that it also sent Southland notice of its M&M Lien on February 12, 2020.[3]  Notably, Halliburton did not obtain relief from the automatic stay before filing its M&M Lien or delivering its notices to Wamsutter and Southland.

On April 16, 2020, Halliburton filed with the Court its *Notice of Perfection, Continuation or Maintenance of Lien Pursuant to 11 U.S.C. § 546(b)*,[4] providing to Southland notice of its liens, including the M&M Lien, and allegedly perfecting them pursuant to 11 U.S.C. §§ 362(b)(3) and 546(b)(1)(A),[5] which together permit the postpetition continuation, maintenance, or perfection of

---

[2] Halliburton has reserved the right to contest the Commencement Date if it becomes relevant.

[3] Southland disputes receiving this notice.

[4] *See* Case No. 20-10158, D.I. 320.

[5] 11 U.S.C. § 362(b)(3) provides that the stay does not pertain to "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) . . . ."  11 U.S.C. § 546(b)(1)(A) states in relevant part that the trustee's avoiding powers are subject to any generally applicable law that "permits perfection of an interest

an interest in a debtor's property if applicable state law creates such interest prior to a bankruptcy filing and the interest's postpetition perfection relates back to the date of its creation (the "Relation Back Exception").[6]  In such notice, Halliburton asserts that its liens extend to the following:

> the whole of the oil and gas leasehold for which labor, materials and/or work and/or services were furnished by Halliburton to [Southland], including: all materials and fixtures owned by the owner or owners of such leasehold and used or employed, or furnished to be used or employed in the drilling or operating of any oil or gas well located thereon, and all oil and gas wells located on such leasehold, and the oil and gas produced therefrom, and the proceeds thereof inuring to the working interest therein as such working interest existed on the date such labor was first performed or such materials or services were first furnished . . . .[7]

Prior to the Petition Date, on March 31, 2015, Southland entered into a credit agreement ("Credit Agreement") as borrower with various lender parties ("Prepetition Lenders") and Citibank, N.A, as the administrative agent.  The obligations under the Credit Agreement were secured by liens (the "RBL Liens") on, among other things, the assets purportedly subject to Halliburton's liens, including the M&M Lien.  The RBL Liens were documented in, among other things, a security agreement, a financing statement filed with the Delaware Secretary of State on March 31, 2015 (the "RBL UCC-1") and a mortgage (the "Mortgage") and UCC-1 financing statement (the "Financing Statement") filed in Sweetwater County, Wyoming on July 5, 2016.

On July 17, 2020, Southland commenced this adversary proceeding by filing a Complaint for Declaratory Relief.  In the complaint, Southland seeks, among other things, declaratory judgments regarding the extent of Halliburton's liens and the priority thereof relative to the RBL Liens.  After Halliburton filed its answer, Southland filed the Motion to obtain an order declaring that, under Wyoming law, the M&M Lien on any of Southland's real or personal property is junior to the RBL Liens and that the M&M Lien does not extend to Production.  Halliburton opposes the relief sought in the Motion with respect to Production, asserting that the M&M Lien does extend thereto and that it takes priority over the RBL Liens.  With respect to all other relevant assets related to the Wells, Halliburton does not contest that its M&M Lien is junior.[8]

---

in property to be effective against an entity that acquires rights in such property before the date of perfection . . . ."

[6] *See, e.g.*, *Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp.*, 884 F.2d 80, 85 (3d Cir. 1989).

[7] Case No. 20-10158, D.I. 320 ¶ 3.

[8] *See* Adv. D.I. 32 ¶¶ 4-5.

### III.    SUMMARY OF THE PARTIES' POSITIONS

Southland argues that the M&M Lien does not extend to Production because Halliburton did not comply with the statutory requirements of chapter 3 of the Revised Wyoming Statutory Lien Act (the "Wyoming Lien Act")[9] to obtain such a lien prepetition. In that regard, Southland asserts that Halliburton was required to provide it, as holder of the mineral interest, as well as Wamsutter with proper notice before such a lien could arise, and that Halliburton failed to do so. Moreover, Southland argues that any of Halliburton's postpetition attempts to encumber Production fail because they are void as a matter of law as violations of the automatic stay. Finally, Southland asserts that, even if Halliburton obtained a lien on Production, such lien is junior to the RBL Liens because of the prior 2015 and 2016 filed or recorded RBL UCC-1, Financing Statement, and Mortgage.

Adopting a contrary interpretation of the Wyoming Lien Act, Halliburton argues that it possesses a valid lien on Production because it was required to provide notice of its lien only to Wamsutter. Moreover, it asserts that the postpetition Production Trapping Letter allegedly providing such notice did not violate the automatic stay because the M&M Lien on Production relates back to the Commencement Date under the Wyoming Lien Act, thus allowing it to take advantage of the Relation Back Exception. Additionally, Halliburton argues that its properly perfected M&M Lien on Production is senior to the RBL Liens, contending, among other things, that the lien was perfected on the Commencement Date and that under Wyoming's Uniform Commercial Code, the RBL Liens could not have been perfected until Southland's oil was later extracted from the ground.

### IV.    APPLICABLE LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that a court may grant summary judgment in whole or in part of a claim or defense "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] Summary judgment serves to "isolate and dispose of factually unsupported claims or defenses" and avoid unnecessary trial where the facts are settled.[11] Thus, at the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.[12]

### V.    LEGAL DISCUSSION

The threshold issue before the Court is whether Halliburton's M&M Lien extends to Southland's Production. There are no material facts in dispute regarding the issues presented.

---

[9] WYO. STAT. ANN. §§ 29-1-203 – 29-10-106.

[10] FED. R. CIV. P. 56(a).

[11] *Delta Mills, Inc. v. GMAC Commercial Fin. LLC (In re Delta Mills, Inc.)*, 404 B.R. 95, 104 (Bankr. D. Del. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also* FED. R. CIV. P. 56(c).

4

Rather, the parties disagree over the proper statutory interpretation of the Wyoming Lien Act. Following a review of the relevant provisions thereof, the Court finds Halliburton's positions unpersuasive.

The Wyoming Lien Act grants nonconsensual lien rights to those who perform work or provide materials to improve real property or mineral interests.[13] More specifically, Chapter 3 of the Wyoming Lien Act addresses liens related to mines, quarries, oil, gas, and other wells. Under section 29-3-103(a), "[e]very person who works upon or furnishes material . . . under contract with the owner of any interest in real estate . . . has a lien to secure payment for (i) [c]onstructing, altering, digging, drilling, driving, boring, operating, completing or repairing any wells, mines or quarries . . . ."[14] Section 29-3-105(a)(i)-(ix) prescribes the property to which such liens extend and includes production of oil, gas, ore, and minerals in solid form as well as the proceeds of such production:

> The lien provided by this chapter covers: (i) All the production of oil, gas and ore and minerals in solid form attributable to the interest subject to the lien; (ii) The proceeds of production attaching to the working interest as the working interest existed on the date labor was first performed or materials were first furnished; (iii) any well . . . and (ix) The whole of the land or leasehold . . . and including all other wells, buildings, property and appurtenances, including water rights, located on the land or leasehold . . . where work was performed or materials furnished.[15]

As a general matter, liens created by the Wyoming Lien Act relate back in time to "the commencement of any construction work or repair of the premises or property"[16] and are junior in priority to any lien, security interest or mortgage which has been perfected upon real or personal property or upon a leasehold interest prior thereto, such as the RBL Liens on Southland's non-Production assets. However, the Wyoming Lien Act specifically addresses liens on production and proceeds differently and does not provide for such liens to relate back to the commencement of work or repair. Rather, based on the plain and unambiguous language of the statute, they arise if and only when proper notice is given to the holder of the mineral interest or working interest and the purchaser. Specifically, subsections 29-3-105(b) and (c) provide that:

> (b) Any lien claimed pursuant to this chapter covering oil, gas or ore and minerals in solid form or the proceeds of their sale is not effective against any purchaser of the oil, gas or ore and minerals in

---

[13] *See* James R. Belcher, *Nonconsensual Liens Under Title 29 of the Wyoming Statutes for Work Performed and Materials Provided Under Contract to Another Person's Property*, WYO. LAW., June 2008, at 20, 21.

[14] WYO. STAT. ANN. § 29-3-103(a).

[15] *Id.* § 29-3-105(a).

[16] *Id.* § 29-1-402(c); *see also Michael's Const., Inc. v. Am. Nat'l Bank,* 278 P.3d 701, 707 (Wyo. 2012) (finding that for priority purposes liens under the Wyoming Lien Act relate back to the time when "visible, on-site commencement of construction work" first occurs).

5

> solid form until written notice of the claim is delivered by certified mail, return receipt requested, to the purchaser at his principal place of business. Notice shall state: (i) The name of the claimant; (ii) His address; (iii) The amount of the linen; and (iv) The description of the interest on which the lien is claimed.
>
> (c) The production of any mineral interest or working interest otherwise subject to a lien under this chapter is not to be encumbered until notice of the lien is delivered as provided in subsection (b) of this section to the holder of the interest. At the time notice is given any proceeds remaining unpaid or any proceeds yet to be paid on future sales of the mineral production shall be encumbered by the lien.[17]

Although Halliburton may have been entitled to assert a lien on Production under Wyoming law, the Production is not encumbered until notice is provided to Southland and Wamsutter. Here, any notice Halliburton provided was not delivered until after the Petition Date and the imposition of the automatic stay. Because a lien on Production does not relate back to a time prior to the Petition Date, Halliburton's postpetition actions do not fall within the scope and safeguards of the Relation Back Exception. Rather, these actions violate the automatic stay imposed by 11 U.S.C. § 362(a)(3)-(6) because they would give rise to postpetition liens and cause the interception of debtor receivables from Wamsutter. Indeed, it is undisputed that once a purchaser receives notice of a lien, the Wyoming Lien Act requires it to withhold payment on minerals encumbered "to the extent of the lien amount claimed" until the lien is resolved.[18] Accordingly, any postpetition attempts of Halliburton to obtain a lien on Production are void *ab initio*.[19]

Halliburton argues that the following subsection of section 29-3-105(a) provides for the relation back it urges the Court to adopt: "The lien provided by this chapter covers . . . (2) [t]he proceeds of production attaching to the working interest as the working interest existed on the date labor was first performed or materials were first furnished." But from a plain reading of the text, this subsection merely provides that Halliburton's M&M Lien could extend to the proceeds of Production and identifies the particular interest to be encumbered. It does not provide for the relation back of a lien on Production, and such a reading would be contradictory to the more specific sections of the Wyoming Lien Act, sections 29-3-105(b) and (c), that address the encumbrance of Production.

Moreover, although Halliburton has argued that section 29-3-105(c) requires notice only to Wamsutter as purchaser, this interpretation is contradicted by the plain language of the subsection requiring notice to "the holder of the interest", logically referring to the earlier used

---

[17] WYO. STAT. ANN. § 29-3-105(b)-(c).

[18] *Id.* § 29-3-105(d) ("A purchaser shall withhold payments for oil and gas runs or ore and minerals in solid form to the extent of the lien amount claimed until delivery of written notice the claim is settled or until otherwise ordered by a court of competent jurisdiction").

[19] *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206-07 (3d Cir. 1991).

phrase in such subsection - "mineral interest or working interest." Furthermore, the reference to subsection (b) in section 29-3-105(c) cannot support Halliburton's interpretation because such reference serves to describe the required method of delivery and content of the notice to be sent to the interest holder (*e.g.*, "by certified mail, return receipt requested" at the "principal place of business").

The Supreme Court of Wyoming has stated that a court's primary objective in any question of statutory interpretation "is to give effect to the legislature's intent" and that in doing so, a court is bound to respect a statute's plain and unambiguous language.[20] Accordingly, the Court must reject Halliburton's interpretation of the Wyoming Lien Act in favor of Southland's and find that Halliburton did not obtain a lien on Southland's Production. Although case law interpreting the various provisions of the Wyoming Lien Act relevant to the parties' disputes is sparse, at least one other court has addressed the issues presented herein and reached the same conclusion of this Court. *See Royal v. Halliburton Energy Servs., Inc. (In re Stone & Wolf, LLC),* No. 04-20177, 2006 WL 2061247, at **3 & 5 (Bankr. D. Wyo. June 15, 2006) (stating that an oil and gas lien for production and proceeds does not relate back but is only effective from the date notice is given).

Given the Court's conclusions, it need not address the parties' remaining arguments regarding the priority of any liens on Southland's Production.

## VI.    CONCLUSION

For the foregoing reasons, the Court will grant the Motion and enter summary judgment in favor of Southland as set forth herein. An appropriate order will follow.

Dated: January 22, 2021

_____
Karen B. Owens
United States Bankruptcy Judge

---

[20] *Cheyenne Newspapers, Inc. v. Bd. of Trs. of Laramie Cty. Sch. Dist. No. 1*, 384 P.3d 679, 682 (Wyo. 2016).